RAYMOND PAUL MATTHEWS,

v.                                  Case No. 2:04-cr-76-FTM-33DNF
                                            2:08-cv-740-FTM-33DNF

UNITED STATES OF AMERICA.

_____

## O R D E R

This cause is before the Court upon Defendant Matthews' motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. cv-1; cr-98). A review of the record demonstrates that, for the following reasons, the motion to vacate must be **denied**.

### PROCEDURAL HISTORY

In August 2004, a grand jury in the Middle District of Florida returned an indictment charging Raymond Paul Matthews with possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g) and 924(e), and of possessing an unregistered short-barreled shotgun, in violation of 26 U.S.C. § 5861 (d) and § 5871. Doc.

cr-1. A petit jury found Matthews guilty as charged. Doc. cr-57. The District Court sentenced Matthews to 280 months imprisonment, to be followed by five years supervised release. Doc. cr-66 at 2-3.

Matthews appealed his conviction and sentence. Doc. cr-67. By judgment entered October 12, 2006, the United States Court of Appeals for the Eleventh Circuit Court affirmed Matthews' convictions and sentence. *United States v. Matthews*, 466 F.3d 1271 (11th Cir. 2006). The mandate issued May 4, 2007. Doc. cr-95. In his appeal, Matthews argued that his Florida convictions for burglary of the curtilage of a structure were not convictions for a violent felony for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). He also argued that 18 U.S.C. § 922(g) was unconstitutional because it exceeded Congress's Commerce Clause power, and that the District Court violated his Sixth Amendment right to a jury trial as set forth in *Apprendi v. New Jersey*, 520 U.S. 466 (2000), by sentencing him as an armed career offender pursuant to 18 U.S.C. § 924(e) based on its own findings that he had committed at least three previous violent felonies.

The Eleventh Circuit, in affirming Matthews' convictions and sentence stated:

> We decide in this appeal whether a Florida conviction for burglary of the curtilage of a structure is a conviction for a violent felony for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the ACCA). Pretermitting consideration of whether such a burglary is "generic burglary," we conclude that it is a violent felony as defined by the ACCA because it "involves conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii).

## I. BACKGROUND

> Raymond Paul Matthews was convicted by a jury of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. § 5861(d). Previously, Matthews had been convicted of multiple felonies under Florida law, including: (1) third-degree burglary in 1985; (2)

second-degree burglary and aggravated battery arising out of the same facts, also in 1985; (3) third-degree burglary in 1989; and (4) aggravated assault in 2001. He was sentenced as an armed career criminal, defined by the ACCA as a person who "has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The mandatory minimum sentence for an armed career criminal is fifteen years' imprisonment. Id.

Matthews argued at sentencing that he was not an armed career criminal because his two third-degree burglary convictions should not be considered violent felonies. The district court heard argument on the question and ruled that Matthews's aggravated battery conviction in 1985, aggravated assault conviction in 2001, third-degree burglary conviction in 1985, and third-degree burglary conviction in 1989 were all convictions for violent felonies as defined by the ACCA. FN1 The district court found that the third-degree burglaries "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." (R.10 at 75.) Therefore, the court sentenced Matthews to 280 months' imprisonment and five years' supervised release.

> FN1. The district court did not find that the 1985 second-degree burglary conviction was a qualifying conviction under the ACCA because that conviction arose out of the same facts and circumstances as the aggravated battery conviction. See 18 U.S.C. § 924(e)(1) (requiring that qualifying violent felonies be "committed on occasions different from one another.")

## II. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

Matthews appeals his sentence, arguing (as he did in the trial court) that neither of his third-degree burglary convictions should be considered violent crimes under the ACCA. Matthews contends that, because, under the Florida statute, those convictions were for burglary of a structure or the curtilage thereof, they are not convictions for "generic burglary." Burglary of a curtilage, Matthews contends, is not generic burglary.FN2

> FN2. Matthews also argues that his Sixth Amendment right to trial by jury was violated when the district court judge determined that his previous convictions were for violent felonies rather than requiring a jury verdict so finding. That argument has been rejected by this court as foreclosed by Supreme Court precedent. See United States v. Greer, 440 F.3d 1267, 1273-74 (11th Cir.2006) (recognizing that Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct.

1219, 140 L.Ed.2d 350 (1998), controls and instructs that the determination may be made by a judge).

And, Matthews appeals his conviction for being a felon in possession of a firearm, based on his arguments (which he did not raise in the district court) that: (1) 18 U.S.C. § 922 is facially unconstitutional because it is an exercise of Congressional power beyond the authorization of the Commerce Clause, and (2) the statute is unconstitutional as applied to him because there was no evidence that his conduct substantially affected interstate commerce. These arguments are foreclosed by circuit precedent. *See United States v. McAllister*, 77 F.3d 387, 389-90 (11th Cir.1996).

The Government argues that burglary of the curtilage of a structure is "generic burglary." It further argues that the district court correctly found that Matthews's third-degree burglary convictions are violent felonies because, even if they are not convictions for "generic burglary," they are convictions for felonies that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii).

## III. STANDARD OF REVIEW

[1]  This court considers de novo whether a particular conviction is a "violent felony" for purposes of the ACCA. *United States v. Wilkerson*, 286 F.3d 1324, 1325 (11th Cir.2002).

## IV. DISCUSSION

[2]  The ACCA defines a violent felony as:

[A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that-

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).

In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court held "an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." 495 U.S. at 602, 110 S.Ct. at 2160. The court defined "generic burglary" as an offense "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599, 110 S.Ct. at 2158.

At the relevant times, Florida law defined third-degree felony burglary as an unprivileged entry into an unoccupied structure or an unoccupied conveyance with intent to commit an offense therein. Fla. Stat. § 810.02. A structure was defined to include the curtilage of the structure. Fla. Stat. § 810.011(1). Florida case law construes curtilage narrowly, to include only an enclosed area surrounding a structure. *See State v. Hamilton*, 660 So.2d 1038, 1044 (Fla.1995); *Henry v. State*, 707 So.2d 370, 372 (Fla.App. 1 Dist.1998)

Consistent with the fact that Florida does not consider burglary of the curtilage of a structure to be a crime distinct from burglary of that structure, *Henry*, 707 So.2d at 372, the judgments of conviction for Matthews's third-degree burglaries list his crimes only as "Burglary" and "Burglary (Structure)." The convictions do not specify whether he entered the roofed portion of a structure or only its curtilage. (R.10-88, Ex. 1 at 1, Ex. 3 at 1.) The charging documents are also ambiguous in that regard. ( Id., Ex. 1 at 3 (charging entry into "a structure or the curtilage thereof"), Ex. 3 at 3 (same).) And, the district court was not presented with any other judicial record that provides that information.

Matthews argues that because the Florida crime of burglary includes both entry into the roofed area of a structure and entry into the curtilage of a structure and because the judicial record does not demonstrate that he was convicted of burglary of the roofed areas of structures, his convictions may have been for burglary of the curtilages of the structures. He further contends that burglary of the curtilage of a structure is not "generic burglary," as defined by the Supreme Court in *Taylor*. Thus, he concludes that because these convictions are not "generic burglary" convictions, they are not convictions for violent felonies as defined by the ACCA.

We agree with Matthews that, on this record, one cannot determine whether either of his two third-degree burglary convictions was for burglary of the roofed portion of a structure.FN3 It may be that Matthews was convicted of these burglaries for entering the curtilages of the structures.

Even so, Matthews's logic fails; it discounts an alternative prong of the statutory test for a violent felony, that the crime "otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii). We hold that, even if Matthews's third-degree burglary convictions are not convictions for "generic burglary," they are convictions for violent crimes under the ACCA because they satisfy this alternative definition.

> FN3. The Government cites law enforcement officers' probable cause affidavits and other documents outside the judicial record to demonstrate that Matthews entered the structures. ( See Appellee's Brief at 3, 4.) To the extent the Government invites us to rely on those documents to determine that Matthews entered the structures, we decline to do so. *See Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (restricting the kind of evidence that a judge may consider in making a finding that a prior conviction qualifies under the ACCA to judicial records).

As we have explained above, Florida narrowly defines the curtilage of a structure to include only an enclosed area surrounding a structure. We are satisfied that a burglary of this circumscribed area is indeed a crime that "presents a serious potential risk of physical injury to another[.]" *Id.* Regardless of whether a burglar breaches the roofed portion of a structure, his unlicensed entry into the enclosed area surrounding that structure may bring him into close physical proximity with the same persons he might encounter were he to enter the structure. He may come into contact with the property's owners, occupants, or caretakers. His close physical presence to the structure could lead an innocent person to investigate why he is there, and his presence alone could reasonably be perceived by any of these persons as threatening. Either the innocent or the burglar might react violently. In short, the burglar's presence in the curtilage of the structure presents a serious potential risk that violence will ensue and someone will be injured.

Our decision is consistent with the Supreme Court's opinion in *Taylor* which specifically acknowledges that some burglary-like offenses that are not "generic burglaries" may be violent felonies nonetheless. *See Taylor*, 495 U.S. at 600 n. 9, 110 S.Ct. at 2159 n. 9 ("The Government remains free to argue that any offense-including offenses similar to generic burglary-should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under § 924(e)(2)(B)(ii)."). And, it is consistent with our precedent. Recently, we held that an attempt to commit burglary... presents the potential risk of physical injury to another sufficient to satisfy the ACCA's definition of a violent felony.

*United States v. James*, 430 F.3d 1150, 1157 (11th Cir.2005), *cert. granted*,[1] 547 U.S. 1191, 126 S.Ct. 2860, 165 L.Ed.2d 894 (2006). In deciding that conspiracy to commit robbery is a violent felony, we said, "When one reaches an agreement with a co-conspirator to commit a robbery, and formulates the intent to commit the robbery, his conduct presents at least a potential risk of physical injury within the meaning of § 924(e)(2)(B)(ii)." *United States v. Wilkerson*, 286 F.3d 1324, 1325-26 (11th Cir.2002). And, we have construed the same language in section 4B1.2 of the United States Sentencing Guidelines to hold that the crimes of attempted burglary, felony DUI, carrying a concealed weapon, and using an Internet facility to entice a minor to engage in sexual activity all present "a serious potential risk of physical injury to another." *See United States v. McGill*, 450 F.3d 1276 (11th Cir.2006); *United States v. Searcy*, 418 F.3d 1193 (11th Cir. 2005); *United States v. Gunn*, 369 F.3d 1229 (11th Cir.2004); *United States v. Gilbert*, 138 F.3d 1371 (11th Cir.1998).[2]

The district court did not decide whether burglary of the curtilage of a structure is a "generic burglary" as discussed in *Taylor*. Given our holding that burglary of the curtilage of a structure (as defined by Florida law) "otherwise involves conduct that presents a serious potential risk of physical injury to another," we need not express an opinion on whether the offenses in question here are "generic burglaries" as discussed in *Taylor*.


## V. CONCLUSION

Because we find no merit in Matthews's constitutional arguments and hold that a Florida conviction for burglary of a structure's curtilage is a conviction for a violent crime because it "involves conduct that presents a serious potential risk of physical injury to another[,]" we affirm Matthews's conviction and sentence pursuant to the ACCA.

*United States v. Matthews,* 466 F.3d 1271, 1272-75 (11th Cir. 2006). *See also, United States v. Parrish*, 312 Fed. Appx. 297, 300 (11th Cir. 2009) (The defendant's prior

---

[1]  In *James v. United States*, 550 U.S. 192 (2007), the Supreme Court held:
(1) attempt offenses may qualify as predicates for sentencing under the Armed Career Criminal Act (ACCA) when they involve conduct that presents a serious potential risk of physical injury to another;
(2) attempted burglary, as defined by Florida law, is a "violent felony" within meaning of residual provision of the ACCA; and
(3) construing prior Florida conviction for attempted burglary as a "violent felony" within meaning of the ACCA did not raise Sixth Amendment *Apprendi* issue .

[2] *Gilbert* was abrogated by *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008).

convictions under Florida law for burglary of a structure qualified as violent felony convictions, for purposes of defendant's sentencing for being a felon in possession of a firearm under Armed Career Criminal Act (ACCA), even if they were not for generic burglaries, because they involved conduct that presented a serious potential risk of physical injury to another; the criminal acts underlying the burglary convictions posed the risk that defendant would have a face-to-face confrontation with another person while crossing the curtilage or within the interior of the structure. 18 U.S.C.A. § 924(e)).

Matthews petitioned the United States Supreme Court for a Writ of Certiorari. The petition was denied October 1, 2007. *Matthews v. United States*, 128 S.Ct. 286,169 L.Ed.2d 208 (2007).

Matthews timely filed the instant 28 U.S.C. § 2255 motion to vacate on September 30, 2008. Doc. cv-1; cr-98.

## FACTUAL BACKGROUND

### Motion to Suppress Hearing • December 30, 2004

On February 8, 2004, at about 10:30 p.m., the Lee County Sheriff's Office received a 911 call about a domestic dispute between a male and female at the Seminole Campground located at 8991 Triplett Road, North Fort Myers, Lee County, Florida. Doc. cr-32 [Transcript of Motion To Suppress Hearing] at 28-32. The caller stated that it was possibly a physical alteration between a male and a female, and that they heard objects being thrown "around in the trailer." Id. at 28. Lee County deputies Sergeant Todd Garrison, Corporal Janet Rincon, and Corporal Steve Coles went to the scene. Id. at 32. According to the dispatch printout, Exhibit 3, the complainant stated that he could hear the female [later identified as Miss Kitz] say " If you're going to go ahead and Signal 5 yourself

8

(kill yourself), go ahead and just leave me alone." Id. at 31. The deputies were given information from a neighbor that they had possibly heard a loud bang or gunshot from a trailer, which the neighbor could identify. Id. at 33. The neighbor pointed to the trailer on lot 40. Id. at 34.

As Sergeant Garrison approached the trailer, he heard a male inside the trailer say, "Give me some more ammunition, give me some more bullets."  A female said that he had "already shot the one bullet." Id. at 35.

The officer looked through the cracked blinds of the window closest to the road (called both front or rear window), id. at 39, 53, before approaching the door. He saw Matthews sitting on a couch holding a short-barreled shotgun pointed directly at a female standing about five feet from him. Id. at 37. Sergeant Garrison notified his partner, Corporal Coles, and also Corporal Rincon. Id. Sergeant Garrison then went to the door, drew his weapon, opened the door, and confronted Matthews, who was intoxicated. Id. at 37-39. Matthews had stuffed the shotgun in the couch. Id. at 37-38. According to Sergeant Garrison, Corporal Rincon said she looked through the side window and could see Matthews holding something, but he did not think Corporal Rincon made out what it was. Id. at 39-40. Sergeant Garrison further testified that even after hearing Matthews and his girlfriend talk about the ammunition, he did not know whether the firearm Matthews was holding was loaded. Id. at 64.

Defense counsel asked Sergeant Garrison if, when he later spoke with Matthews' girlfriend, whether she indicated that she had not been in fear for her life at any point. Id. at 58. Sergeant Garrison testified that he did not obtain a statement from Miss Kitz. Id.

Corporal Coles testified to essentially the same facts as Sergeant Garrison, and in

particular, that he had looked through the same window that Sergeant Garrison "looked through" and that he saw Matthews "sitting on the couch with a sawed-off shotgun pointing it towards his girlfriend." Id. at 72-73.

During the suppression hearing, counsel for Matthews argued that the facts did not show there was an assault (the government had made the legal argument in its response to the motion that the officer had probable cause to believe that Matthews was committing the felony of possession of a short-barreled shotgun, as well as assault, and that a dangerous person was present, Doc. cr-25 at 6). Doc. cr-32 at 92. When defense counsel tried to argue that Miss Kitz did not appear to believe that she was a victim or that she was in fear of Matthews and could have left when she wanted to, the Court stated that it was speculation, but that defense counsel could infer and argue it. Id. at 95. The government countered by making the legal argument that the act of Matthews' pointing the shotgun at his girlfriend constituted an assault. Id. at 101.

The Magistrate Judge issued a Report and Recommendation and made the following findings:

> In the instant case, the officers received a 911 dispatch informing them of a domestic dispute and a threatened suicide at Lot 40. Corporal Rincon spoke with the neighbor who made the 911 call verifying the information in the call and learning that a possible gunshot had been fired. Officers Garrison and Coles testified that they heard yelling emanating from the trailer on Lot 40. Deputy Garrison testified that due to the nature of the call being a threatened suicide coupled with the neighbor reporting a possible gunshot, he believed that a weapon might be involved. Deputies Garrison and Coles also testified that they heard a male yelling to get him more bullets, and a female voice yelling that he had used all the ammunition and there was no more. The officers had an emergency situation involving endangerment of the life of the male who threatened suicide and of the female who was in the trailer with him. The officers had to take immediate action to protect the individuals in the trailer. The officers reasonably believed that an emergency existed which called for an immediate response to protect

the citizens in the trailer and to protect themselves. The Court finds that the officers acted lawfully in approaching the trailer, entering the trailer to arrest the Defendant, and seizing the evidence.

Doc. cr-35 at 6. The District Court adopted the factual findings and legal conclusions of the Magistrate Judge and denied the motion to suppress. Doc. cr-40 at 2.

Prior to the suppression hearing, on November 9, 2004, the government provided Matthews discovery pursuant to the standing discovery order. Docs. cr-15 and 16. Included in the 282 pages of discovery was the sworn statement of Matthews' girlfriend, Kirsten Kitz (pages 000020 - 000025), and the probable cause statement of Corporal Coles (page 000009). Both documents contain information that Matthews' girlfriend gave a sworn statement after Matthews' arrest wherein she stated that there was no physical contact, she was not threatened and that she was not in fear of harm during the incident.

## Trial - February 15 and 16, 2005

On the first day of trial, Sergeant Garrison testified that when he approached the trailer, he could hear a male yell, "Give me some more fucking bullets," and a female say, "You already shot the bullet we had." Doc. cr-85 [Transcript of Jury Trial] at 176. He testified that based on hearing those statements, he looked into the window in the front/back of the trailer and saw Matthews holding a short-barreled shotgun. Id. at 176,187. The blinds were in disarray and a section of the blinds was open. Id. at 188. According to Sergeant Garrison, Corporal Coles was standing next to him when he looked through the window, and Corporal Rincon was at a side window of the trailer. Id. at 192. Sergeant Garrison notified Corporal Coles of what he had observed. Id. at 193. Sergeant Garrison testified that Corporal Rincon looked through the side window and said that she saw Matthews holding something. Id. at 195-198.

Corporal Rincon testified that she went to the side window and was able to look through the window because the blinds were bent. Id. at 254- 256. She stated that she saw Matthews holding some type of weapon, id. at 256, and that she advised the other officers that Matthews had something in his hands. Id. at 257-258. Corporal Rincon did not know whether or not Sergeant Garrison looked through the back window. She believed that he also looked through the side window. Id. at 258, 270.

Corporal Coles testified that Sergeant Garrison looked through the front window that was facing the road. Id. at 296-297. Corporal Coles stated that Sgt Garrison told him he saw a man with a gun, and that when he, Corporal Coles, looked through the same window, he saw Matthews with a "sawed-off" shotgun. Id. at 298. Corporal Coles testified that he thought Miss Kitz was in danger. Id. at 301. Corporal Coles further testified that he also looked through the side window when he positioned himself at the side of the trailer and saw Matthews with the "sawed-off' shotgun. Id. at 302.

## MATTHEWS' CLAIMS

### Claims Not Cognizable in the Section 2255 Motion To Vacate Sentence

Matthews argues that the government withheld material information at the suppression hearing and at the trial, that the law enforcement officers testified falsely and the government failed to correct the fabricated evidence, violating his constitutional rights under the Fifth and Sixth Amendments. These claims involve trial and credibility issues that were available on direct appeal and are not cognizable in a § 2255 proceeding.

Collateral review pursuant to 28 U.S.C. § 2255 is not a substitute for direct appeal. *See Lynn v. United States*, 365 F.3d 1225,1232 (11th Cir.), *cert. denied*, 543 U.S. 891 (2004); *Burke v. United States*, 152 F.3d 1329,1331-32 (11th Cir. 1998) (citing *Sunal v.*

*Large*, 332 U.S. 174,178 (1947)). Such claims can be raised on collateral review only when the alleged error constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  Matthews' claims do not meet this standard.

Furthermore, Matthews cannot establish with any specificity that any document or statement exists which the government withheld. Nor can he establish that the result in his trial would have been any different even had such material existed and been "turned over." To the extent that Matthews is raising a *Brady* claim, a successful *Brady* claim requires three elements: 1) the prosecution suppressed evidence; 2) the evidence suppressed was favorable to the defense or exculpatory; and 3) the evidence suppressed was material. *Brady v. Maryland*, 373 U.S. 83 (1963); *Wright v. Hopper*, 169 F.3d 695 (11th Cir. 1999). Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419 (1995); *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). Here, Matthews cannot establish that the government suppressed evidence.  Matthews has not raised any constitutional issue other than ineffective assistance of counsel, and he has not claimed that any error in this case (assuming that there is one) constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure. ' " *Reed*, 512 U.S. at 348.

Even if this Court were to accept Matthews' characterization of the above claims as valid, Matthews is not entitled to relief because he did not raise these claims on appeal.

Ordinarily, claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review. *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152,166 (1982); *McCoy v. United States*, 266 F.3d 1245,1258 (11th Cir. 2001). When a defendant raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error to excuse both defaults. *McCoy,* 266 F.3d at 1258-59. The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley*, 523 U.S. at 623; *Jones v. United States*, 153 F.3d 1305,1307-08 (11th Cir. 1998).

As cause to excuse his procedural default, Matthews alleges that his attorneys rendered ineffective assistance in failing to raise these claims. A petitioner can establish cause in some circumstances by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see Fortenberry v. Haley*, 297 F.3d 1213,1222 (11th Cir. 2002), however, the petitioner must fully allege and prove deficient performance that worked to his actual and substantial disadvantage. *See Reece v. United States*, 119 F.3d 1462,1465-68 (11th Cir. 1997). Matthews cannot meet this burden.

Matthews' attorneys did not perform deficiently by failing to litigate these claims because they were meritless. Moreover, Matthews has not alleged any specific prejudice, much less proved that his attorneys' failure worked to his actual and substantial disadvantage.

For example, Matthews alleges that the prosecutor withheld material information at the suppression hearing and at the trial, and that the prosecutor misrepresented the facts

at the suppression hearing. He also claims that the officers testified falsely and the prosecutor failed to correct the perjured testimony. None of these claims of misconduct are supported by any factual allegations. Because the officers may have testified differently as to some of the facts depending on what they saw and remembered does not mean that their testimony was false or that it materially contradicted other testimony.  No evidence in this case suggests, much less meets, Matthews' heavy burden of establishing with clear evidence, that the prosecutor withheld evidence or that the witnesses lied.

Matthews' trial and appellate counsel did not perform deficiently in failing to claim that the prosecutor withheld evidence. All discovery was provided and trial counsel had the opportunity to cross examine the witnesses at both the suppression hearing and trial in an effort to challenge the witness's recollection, opportunity to witness the events, and veracity.  Matthews cannot establish that his attorneys' failure to raise the claims worked to his actual and substantial disadvantage. *See Reece*, 119 F.3d at 1465-68.

Furthermore, on the merits, Matthews' claims do not warrant relief. He alleges the government committed a *Brady* violation when it failed to disclose certain material, presumably a report alleged to have been written by Corporal Rincon, prior to or during the suppression hearing. It appears that Matthews also claims that the government had a duty to disclose to the Magistrate Judge the fact that Miss Kitz, Matthews' girlfriend, did not feel threatened when Matthews had the short-barreled shotgun and that she did not feel he pointed it at her. Matthews' allegations are without merit.

The Due Process Clause of the Fifth Amendment to the Constitution imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence that is materially favorable to Matthews, either as direct or impeaching evidence. *Brady v.*

*Maryland,* 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150,154 (1972). To establish a *Brady* violation, the petitioner must prove: (1) that the government possessed evidence favorable to the petitioner; (2) that the petitioner does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *United States v. Bailey*, 123 F.3d 1381, 1397 (11th Cir. 1997); *United States v. Meros,* 866 F.2d 1304, 1308 (11th Cir. 1989). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Thus, a constitutional error occurs only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the proceedings. Id. at 678. *See also United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *United States v. Starrett*, 55 F.3d 1525,1555 (11th Cir. 1999).

"Materiality" is determined by evaluating all the evidence adduced at trial. *United States v. Agurs*, 427 U.S. 97,112 (1976). Materiality is a function of the strength of the government's case. *United States v. Burroughs*, 830 F.2d 1574,1579 (11th Cir. 1987). Reversal of a conviction is not required when a defendant fails to establish materiality of allegedly suppressed evidence. *United States v. Parker*, 586 F.2d 422, 435 (5th Cir. 1978). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *Agurs*, 427 U.S. at 109-10.

The constitution does not require that the prosecution make a complete and detailed

accounting to a defendant of all the results of an investigation. *Moore v. Illinois*, 408 U.S. 786, 795 (1972). Moreover, the prosecutor is generally not held to a duty of disclosure of evidence or witnesses who are already known or are accessible to a defendant. *United States v. Prior*, 546 F.2d 1254,1259 (5th Cir. 1977).

While Matthews asserts that a report written by Corporal Rincon must have existed, Matthews fails to support this allegation with any evidence. He can only support the allegation with speculation and supposition. Such a report did not and does not exist. As to the claimed duty that Matthews alleges the government violated by not bringing Miss Kitz's statement to the attention of the Magistrate Judge, this statement was provided in discovery. Matthews could have called Miss Kitz to testify. The problem with Matthews' argument is that it would not have mattered if, at the suppression hearing, she had testified that she did not feel threatened or that she did not see Matthews point the gun directly at her, because 1) the officers did not know what she saw or felt until after they arrested Matthews; and 2) the Magistrate Judge had to make a Fourth Amendment determination based only on what the officers knew and saw prior to entering the trailer. What they knew is that there was a domestic dispute, a report of shots fired, and that the occupants of the trailer were talking about a gun, bullets and a possible suicide. What they saw was Matthews pointing a short-barreled shotgun at Miss Kitz. This situation justified a warrantless entry and search due to exigent circumstances, which permits a warrantless entry into a home and a search when there is both probable cause and reasonable belief that an emergency exists that requires an immediate response to protect citizens from imminent danger. The doctrine applies when a police officer reasonably believes that a person within is in need of immediate aid. Matthews has failed to establish any *Brady*

violation.

The comment by the prosecutor at the suppression hearing that what Matthews did when pointing the shotgun at Mrs. Kitz amounted to an assault was proper argument. *See, e.g., United States v. Smith*, 700 F.2d 627, 633-34 (11th Cir.1983) (lawyer in closing argument has right to state the conclusions he contends that the jury should draw from the evidence). Again, it matters not what Miss Kitz thought or felt at the time; what matters are those facts that would lead a reasonable officer to believe that someone was in immediate danger at the time. So if Miss Kitz had testified and said that she did not feel endangered, these facts were not known to the officers at the time of the entry, and the evidence would not have assisted the Magistrate Judge in determining exigent circumstances.

Matthews claims that the officers testified falsely and that the prosecutor failed to correct the false testimony. All three testifying officers were subject to cross-examination at trial. The jury made its credibility determinations and convicted the defendant. Matthews points to no competent evidence supporting his claim of false testimony.

### Cognizable Ineffective Assistance of Counsel Claims

Matthews also claims that trial counsel and appellate counsel rendered ineffective assistance of counsel for failing to raise these issues. Matthews' ineffective assistance of counsel claims are cognizable under 28 U.S.C. § 2255. *See Lynn v. United States*, 365 F.3d 1225,1234 n.17 (ineffective assistance claims should be decided in section 2255 proceedings). However, as discussed below, these claims are meritless.

Ineffective Assistance of Trial Counsel

Matthews claims he received ineffective assistance of counsel at trial. The Sixth

Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); see also *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir.1984). Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating a conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *Strickland,* 466 U.S. at 687, 694. "There is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Thus, if the defendant fails to show that he is prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *See Coulter v. Herring,* 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. In other words, when reviewing counsel's decisions, "the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Furthermore, "[t]he burden

of persuasion is on a petitioner, or defendant to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Id.* (citing *Strickland,* 466 U.S. at 688). This burden of persuasion, though not insurmountable, is a heavy one. See *id.* at 1314 (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)).

"'Judicial scrutiny of counsel's performance must be highly deferential," and courts "must avoid second-guessing counsel's performance." *Id.* at 1314 (quoting *Strickland*, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy." *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. *See Chandler* at 1314-15 n.15. Thus, the presumption afforded counsel's performance "is not... that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial... were acts that some reasonable lawyer might do." *Id.*

Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16. Finally, "[n]o absolute rules dictate what is

reasonable performance for lawyers." *Id.* at 1317. Considered in light of these standards, the performance of Matthews' counsel was not constitutionally deficient and, in any event, Matthews was not prejudiced. Matthews' claims are vague, conclusory, speculative, or unsupported, and such claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551,1559 (11th Cir. 1991). Matthew is not entitled to relief on this claim.

Ineffective Assistance of Appellate Counsel

The *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126,1130 (11th Cir. 1991). In order to prevail on such a claim, a petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.* Counsel does not provide ineffective assistance when frivolous arguments are not raised on appeal. *Jones v. Barnes*. 463 U.S. 745 (1983); *see also United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (attorney not ineffective for failing to argue a meritless issue).

The Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. *Heath,* 941 F.2d at 1131. Instead, effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. *Id.* Thus, even though an issue not appealed might have been successful, the appellate advocacy has to be judged in its entirety. *Id.* To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court must examine the merits of the issues the defendant alleges his counsel was derelict in not raising on appeal. *Miller v. Dugger,* 858 F.2d 1536,1538 (11th Cir. 1988). Appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." *Alvord v. Wainwright*,

725 F.2d 1282,1291 (11th Cir. 1984).

Matthews claims his appellate counsel was ineffective for failing to raise on appeal the issues discussed above. However, as previously shown, Matthews' claims are without merit. Matthews has failed to meet the two-pronged *Strickland* test. Therefore, Matthews' claims of ineffective assistance of appellate counsel do not entitle Matthews to any relief.

Accordingly, the Court orders:

That Matthews' 28 U.S.C. § 2255 motion to vacate (Doc. cv-1; cr-98) is denied. The Clerk is directed to enter judgment against Matthews in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 13, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: Jeffrey F. Michelland
Raymond Paul Matthews